UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**MICAH GRAY**                                                                                                    **PLAINTIFF**

v.                                                                                      **CIVIL ACTION NO. 5:21-cv-133-BJB**

**SCOTT JORDAN et al.**                                                                                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Micah Gray filed a motion for temporary restraining order and preliminary injunction (DN 26). The Court ordered Defendants to respond, and they have (DNs 28 and 30). Plaintiff has not filed a reply. For the following reasons, the Court denies Plaintiff's motion.

## THIS LITIGATION

Plaintiff, an inmate at the Kentucky State Penitentiary (KSP), brought this lawsuit against Scott Jordan, the KSP Warden, and four Wellpath nurses: Kristen Ellenberger, Jackie Holmes, Kristi Ponzetti, and Karen Ramey (the Wellpath Defendants). The suit alleged they were deliberately indifferent to his serious medical need – a fractured clavicle. On initial review under 28 U.S.C. § 1915A, the Court allowed Plaintiff's claim for an injunction requiring physical therapy to proceed against Defendants in their official capacities. DN 10. The order also allowed the deliberate-indifference damages claim to proceed against the Wellpath Defendants in their individual capacities. *Id.*

Plaintiff now asks for further injunctive relief to "ensure he receive[s] a transfer and or proper medical treatment." DN 26 at 1. He alleges that Defendants Ponzetti and Ramey disregarded a specialist's orders to continue with follow-up visits. *Id*. He asserts that all he has been given for his pain is Tylenol or a similar medication. *Id*. He also states that he has had one

"zoom" physical therapy visit but that KSP does not provide physical therapy "to the extent [his] injury requires." *Id*. at 1-2. According to Plaintiff, he is threatened with irreparable harm because his injury and his mobility will worsen, leaving him in constant pain and unable to complete "daily tasks." *Id*. at 3.

Plaintiff also alleges that he is suffering "further harm" because Defendant Ellenberger's husband, Justin Horne, retaliated against him by "spraying [him] with a level 3 chemical agent for a nonviolent verbal noise." *Id*. Plaintiff states that he is in constant fear that Horne "will lie and assault me again on behalf of his wife." *Id*.

In support, Plaintiff attaches a declaration made pursuant to 28 U.S.C. § 1746. DN 26-1. According to that declaration, Plaintiff has had continued pain and does not have full range of motion in his left arm. *Id*. at 3. He also states that he has been provided two steroid shots. *Id*. He also attaches 17 pages of exhibits consisting of copies of heath care requests and grievances. DN 26-3.

In response, the Wellpath Defendants argue that Plaintiff is unlikely to prevail on the merits because he has only shown a disagreement with his medical treatment and has not provided any medical evidence to support his assertions. DN 28. They assert that Plaintiff will not suffer irreparable injury if the Court denies his motion because he "has received multiple assessments from various medical providers" and admits that he "has received treatment for his various alleged conditions." *Id*. at 4. They further argue that injunctive relief would disrupt prison administration and negatively affect the public interest. *Id*. at 5.

Defendant Jordan's response argues that Plaintiff has not shown that he will succeed on the merits because he has failed to show that medical professionals knew of and disregarded an excessive risk to his health. DN 30 at 4. He argues that Plaintiff has not shown a likelihood of

2

irreparable harm because he has not identified any evidence that physical therapy has been ordered or recommended. *Id*. at 7. Finally, he argues that granting an injunction would place additional burdens on prison staff, embolden inmates to file federal cases, and disserve the public interest by interfering with the Department of Corrections' management of prisons. *Id*.

## THE RECORD

Defendant Jordan attaches a certified copy of Plaintiff's pertinent medical records. DN 30-1. Those records, as well as those Plaintiff attaches to his motion (DN 26-3), do not show that the prison officials were deliberately indifferent in caring for Plaintiff's asserted injury.

Plaintiff's shoulder was injured on December 1, 2020. DN 26-3 at 1. Plaintiff was evaluated by a nurse in the early morning of December 2, when Plaintiff claimed to have pain in the shoulder and could not reach out to the front or above his head but refused to let medical personnel touch his shoulder. DN 30-1 at 10. Medical staff explained the importance of immobilizing his arm so no further injury would occur. After the evaluation Plaintiff was seen moving around his cell, moving his left arm, and joking with other inmates. *Id*.

A December 8, 2020, x-ray showed that Plaintiff had an acute left clavicle fracture. DN 30-1 at 9. Plaintiff saw an orthopedist at Baptist Health Medical Group on December 11, 2020. *Id*. at 2. During that visit, the orthopedist diagnosed a fracture of the left clavicle. *Id*. at 4. Plaintiff was given a sling and a clavicle strap, instructed in the use of the strap, and "encouraged in range of motion exercises for the elbow wrist and fingers as his pain allows." *Id*. The orthopedist determined that Plaintiff's prognosis was "excellent for healing with nonoperative treatment." *Id*.

On December 29, 2020, Plaintiff filed a healthcare request stating that, even after wearing the brace and sling, his shoulder was "stiff really bad and there [was] a lot of pain." DN 26-3 at 9. The staff response was "encourage patient to adhere to specialist's instructions." *Id*.

Plaintiff was seen by the orthopedic specialist again on January 28, 2021. DN 26-3 at 6. On February 2, Defendant Ramey saw Plaintiff to discuss the orthopedist's recommendation. DN 30-1 at 13. On February 6, Plaintiff filed a healthcare request in which he stated that he "tried to do some push ups and hurt my collarbone again." DN 26-3 at 9. He was prescribed ibuprofen for seven days for the pain. *Id*.

The orthopedist saw Plaintiff for another follow-up appointment on May 3, 2021, at which time Plaintiff's clavicle was x-rayed again. DN 30-1 at 7. According to the orthopedist's notes, Plaintiff had pain underneath his left scapula, had no pain in the mid-clavicular region, and complained of intermittent pain in the left interscapular region. *Id*. Plaintiff also reported "doing up to 1000 push-ups daily." *Id*. The orthopedist reported, "[c]losed displaced fracture of shaft of left clavicle with routine healing;" "[Plaintiff] may continue unrestricted activities[;]" "[n]o routine follow-up is needed."

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy[.]" *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "In deciding whether to grant a preliminary injunction, a court weighs four factors: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.'" *Tippins v. Washington*, No. 20-1480, 2021 WL 3700574, at *3 (6th Cir. Apr. 20, 2021) (quoting *Bays v. City of*

*Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017).[1] The movant carries the burden of persuasion, and the proof required to obtain a preliminary injunction exceeds that required to survive a summary-judgment motion. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

## PLAINTIFF'S CLAIMS FAIL THE PRELIMINARY-INJUNCTION STANDARD

### A. Deliberate-indifference claim

#### 1. Success on the merits

The Eighth Amendment protects convicted prisoners from "cruel and unusual punishments." U.S. Const. amend. VIII. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners may constitute the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994).

Where a prisoner alleges only that the medical care he received was inadequate, as opposed to non-existent, "federal courts are generally reluctant to second guess medical judgments," unless the medical treatment is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "A plaintiff must also show that his claim involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment." *Wilson v. Smith*, No. 3:15-CV-P456-CRS, 2015 WL 6870142, at *4 (W.D. Ky. Nov. 6, 2015) (citing *Westlake*, 537 F.2d at 860, n.5).

---

[1] "The Court applies the same standard to a motion for a temporary restraining order (TRO) as to a motion for a preliminary injunction." *W. Mich. Fam. Homes LLC v. United States Dep't of Agric.*, No. 1:13-CV-1277, 2013 WL 12109437, at *1 (W.D. Mich. Nov. 26, 2013) (citing *Summit Cty. Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547. 550 (6th Cir. 2004)).

5

The exhibits presented in support of and in opposition to Plaintiff's motion show that Plaintiff received medical treatment, including x-rays, an evaluation by an outside orthopedist, and at least one follow-up visit to that orthopedist for his broken clavicle. There is no recommendation by a medical provider on either the medical records provided by Defendant Jordan or the exhibits provided by Plaintiff that Plaintiff should be provided physical therapy for his clavicle injury. It appears that Plaintiff either mistakenly believes that physical therapy was ordered for him or simply disagrees with the specialist's assessment that his fracture was healing routinely without the necessity of physical therapy. Even so, Plaintiff was afforded a "zoom" physical therapy visit and prescribed Tylenol and Ibuprofen for his pain. Accordingly, the Court finds the likelihood of Plaintiff's success on the merits unlikely.

*2. Irreparable injury*

To show irreparable harm, Plaintiff must point to harm that is not remote or speculative but is actual and imminent. *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). The injury must be of such imminence that there is a clear and immediate need for relief in order to prevent irreparable harm. *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Nothing in the record or papers supports Plaintiff's assertion that without a transfer or "proper" medical treatment, his mobility will worsen, leaving him in constant pain and unable to complete "daily tasks." Plaintiff has shown no reason, other than his own speculative opinion, to believe that these future injuries will occur without his requested injunctive relief.

*3. Substantial harm to others*

Preliminary injunctions related to medical care may "have an unduly adverse [e]ffect on the ability of correctional medical personnel to exercise their professional judgment in

determining the appropriate course of treatment for inmates." *Garren v. Prisoner Health Servs.*, No. CIV.A. 11-14650, 2012 WL 204481, at *5 (E.D. Mich. Jan. 4, 2012) (footnote omitted), *report and recommendation adopted sub nom. Garren v. Prison Health Servs.*, No. 11-CV-14650-DT, 2012 WL 204468 (E.D. Mich. Jan. 24, 2012). Plaintiff identifies no reason why such would not be the case here.

*4. Public interest*

Similarly, judicial intervention in internal prison operations without an urgently compelling and extraordinary reason harms the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context."); s*ee also Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984) (noting that courts are ill-equipped to deal with problems of prison administration). Instead, the public interest generally disfavors judicial involvement in day-to-day prison operations such as a transfer to another prison, as Plaintiff requests here. *See, e.g.*, *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration."); *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020) ("'The Constitution charges federal judges with deciding cases and controversies, not with running state prisons.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 365 (1996) (Thomas, J., concurring))); *Downer v. Bolton*, No. 3:17-CV-P341-CRS, 2017 WL 4782682, at *2 (W.D. Ky. Oct. 23, 2017) (denying motion for injunctive relief seeking transfer to another prison).

\* \* \*

Because all four factors weigh against granting a preliminary injunction, the Court denies Plaintiff's motion for emergency injunctive relief related to his clavicle and deliberate-indifference claim.

## B. Retaliation claim

The Court also denies Plaintiff's requested injunctive relief based on his alleged fear of retaliation from Horne. Plaintiff hasn't sued Horne or, aside from this portion of his motion, complained that Horne violated the law by retaliating against him. "A court may not grant a preliminary injunction when the issues raised in the motion are entirely different from those raised in the complaint." *Frost v. Stalnaker*, No. 1:09CV662, 2009 WL 3873666, at *2 (S.D. Ohio Nov. 18, 2009) (collecting cases); *see also Thomas v. DeBoer*, No. 1:08-CV-744, 2009 WL 4068438, at *2 (W.D. Mich. Nov. 23, 2009) ("Plaintiff's motion fails because he seeks injunctive relief that is unrelated to this lawsuit. Specifically, the retaliation claims alleged in plaintiff's complaint against defendants . . . involve events that are entirely unrelated to the new retaliation claims alleged in his motion for a preliminary injunction against non-parties[.]"). Plaintiff's motion in this regard is premised on a new claim that is separate from the deliberate-indifference claims raised in his Complaint.

## ORDER

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for temporary restraining order and preliminary injunction (DN 26).

Date:


cc: Plaintiff, *pro se*
      Counsel of record
B213.009